UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WESLEY A. HARRIS,

       Plaintiff,

vs.                       Case No. 3:08-cv-726-J-32MCR

MICHAEL J ASTRUE,
Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

     This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, it is recommended the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

     Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on April 15, 2001, alleging an inability to work since April 15, 2001. (Tr. 57-59, 57). The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 42-48, 53-54). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on September 25, 2007. (Tr. 205-32). On November 20, 2007,

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 17-26).  On January 17, 2008, Plaintiff filed a Request for Review by the Appeals Council.  (Tr. 11-13).  The Appeals Council denied Plaintiff's request for review, thus making the ALJ's November 20, 2007 decision the final decision of the Commissioner.  (Tr. 4-6).  Plaintiff timely filed his Complaint in the U.S. District Court on July 18, 2008.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since April 15, 2001, due to a spinal injury which causes severe pain in his left knee and the left side of his back.  (Tr. 126).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was 49 years of age on the date of the hearing.  (Tr. 208).  He has a high school education and past relevant work experience as a meter reader, audit clerk, car wash attendant, medical records technician, and file clerk.  (Tr. 23, 209, 228).

### I.    <u>Medical Evidence</u>

Plaintiff visited I.M. Sulzbacher Center for the Homeless ("the clinic") on July 6, 2005.  (Tr. 204).  Plaintiff's chief complaint was injury to his spine and knee.  <u>Id.</u>  Plaintiff reported he had suffered with back pain for years, but he had experienced constant pain for one year.  <u>Id.</u>  Mary K. Robinson, M.D., performed Plaintiff's physical exam and noted Plaintiff had difficulty ambulating.  <u>Id.</u>  Dr. Robinson also noted Plaintiff had a very unsteady gait, which was worse on the left side.  <u>Id.</u>  Dr. Robinson diagnosed lumbar disc disease and completed a form regarding Plaintiff's physical limitations.  (Tr. 164).  Dr. Robinson indicated Plaintiff could not bend, squat, stand, or climb.  <u>Id.</u>  Dr. Robinson

restricted Plaintiff to no lifting over 20 pounds.  <u>Id.</u>  Dr. Robinson indicated Plaintiff's

condition was permanent.  <u>Id.</u>  However, Dr. Robinson also estimated a duration of

twelve months, with an probable end date of July 6, 2006.  <u>Id.</u>  Dr. Robinson noted

Plaintiff would need ongoing pain management treatment/therapy, but could work 31-40

hours per week.  <u>Id.</u>  Dr. Robinson also marked the box indicating Plaintiff was "unable

to work."  <u>Id.</u>

On August 8, 2005, Hung V. Tran, M.D., performed a consultative examination of

Plaintiff.  (Tr. 165).  Plaintiff told Dr. Tran he was unable to walk further than the parking

lot, even with his cane, and could not lift anything up off the floor.  <u>Id.</u>  Plaintiff told Dr.

Tran that his back pains begun in 1980 after a fight.  <u>Id.</u>  However, Plaintiff stated the

pains had not been severe until a few months before his visit.  <u>Id.</u>  Plaintiff indicated

both knees had been hurting since 2004, but he had only been using a cane for four (4)

months.  <u>Id.</u>  Dr. Tran noted Plaintiff was taking Tylenol, Flexiril, and Naprosen for his

condition and Plaintiff smoked a ½ pack of cigarettes per day.  <u>Id.</u>  Upon examination,

Dr. Tran noted pain and limitation of motion in Plaintiff's lumbar spine.  (Tr. 167).

Plaintiff was only able to lift 20 pounds with both hands, but otherwise experienced no

limitation in his upper extremities.  <u>Id.</u>  In terms of his lower extremities, Plaintiff was

unable to stand on his left leg only and his gait was limp and unstable even with his

cane.  <u>Id.</u>  Plaintiff's straight leg raising was low, with more pain on his left.  <u>Id.</u>  Plaintiff

was able to squat 10 inches down while holding on to a table.  <u>Id.</u>  When squatting,

Plaintiff experienced more pain in his left knee.  <u>Id.</u>  An x-ray of Plaintiff's lumbar spine

revealed abnormal surface of L3, which Dr. Tran found resembled old cartilage damage.

<u>Id.</u>  Otherwise, the x-ray of Plaintiff's lumbar spine was normal.  <u>Id.</u>  An x-ray of

Plaintiff's left knee showed the disc thinned to more than two-thirds of the normal thickness.  Id.  Dr. Tran diagnosed degeneration in Plaintiff's spine and left knee.  (Tr. 168).

On November 16, 2005, Terry T. Rees, M.D., a non-examining State agency physician, board certified in general and thoracic surgery, completed a Physical Residual Functioning Capacity Assessment of Plaintiff.  (Tr. 180-187).  Dr. Rees opined Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  (Tr. 181).  Dr. Rees opined Plaintiff could never climb ladders/ropes/scaffolds, but could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 182).

On April 27, 2006, Plaintiff returned to the clinic for a medication refill of Flexiril, Naprosyn, and Ultram and to renew his food stamp form.  (Tr. 183).  The doctor reported Plaintiff was in "obvious physical distress" and diagnosed chronic back and knee pain.  Id.  The doctor also noted Plaintiff tried to get a financial evaluation at the hospital, but was having trouble because he needed an I.D. that reflected his current address.  Id.  Plaintiff visited the clinic again on June 28, 2006.  (Tr. 188).  Once more, Plaintiff received a refill on Flexiril, Ultram, and Naprosyn.  Id.  Plaintiff's diagnosis remained unchanged.  Id.

Plaintiff was seen by a nurse practitioner at the clinic on February 28, 2007.  (Tr. 199).  Upon examination, the nurse noted both of Plaintiff's knees were tender to palpation with crepitous bilaterally.  Id.  It was noted Plaintiff had been out of his medication for 2 to 3 months and had increasing pain in both knees.  Id.  Plaintiff was diagnosed with chronic pain and disc disease.  Id.  Plaintiff's treatment plan included a

knee brace and prescriptions for Ultram, Flexiril, and Ibuprophen.  Id.  Plaintiff was instructed to return to the clinic in one month.  Id.

On March 23, 2007, Plaintiff returned to the clinic for his follow-up.  (Tr. 192). Plaintiff was seen by Dr. Robinson, who completed a Sedentary Requirements Checklist and a Physical Capacity Evaluation form.  (Tr. 192).  On the Sedentary Requirements checklist, Dr. Robinson noted Plaintiff had chronic pain, degenerative disc disease of the thoracolumbar and cervical spine, and internal derangement/traumatic arthritis of the left knee.  Id.  Dr. Robinson opined Plaintiff was unable to use both hands in fine manipulation and was unable to sustain activity at a pace and with the attention to task necessary for the competitive work place.  Id.  Specifically, Dr. Robinson determined Plaintiff was unable to use his hands repetitively in simple grasping, pushing and pulling, and fine manipulation without cervical spine numbness and tingling.  (Tr. 193).  Dr. Robinson opined Plaintiff could not lift and carry ten (10) pounds, sit for up to six (6) hours in a normal position, or stand for two (2) hours in an eight (8) hour work day, but could lift five (5) pounds on a repeated basis and walk short distances.  (Tr. 192).  On the Physical Capacity Evaluation form, Dr. Robinson noted Plaintiff could stand or walk one (1) hour in a normal work day, sit three (3) hours, and lift up to ten (10) lbs. occasionally.  (Tr. 193).  Dr. Robinson indicated Plaintiff could bend occasionally, but could not squat, crawl, or climb and she opined Plaintiff's other functional limitations included depression, mental distraction, memory loss, and difficulty sleeping.  (Tr. 193-194).

Treatment notes from the clinic dated May 2, 2007, indicate Plaintiff walked with an unsteady gait and winced in pain when changing positions.  (Tr. 198).  The nurse

practitioner who examined Plaintiff also noted Plaintiff was using a knee brace on both knees and was using his mother-in-law's crutches.  Id.  Plaintiff was unable to stand for any length of time without pain in both knees.  Id.  Plaintiff complained of pain in his neck, arm, and shoulder.  Id.  On June 4, 2007, it was noted Plaintiff was unable to apply for a Shands card due to his separation from his wife and his address change. (Tr. 197).  Plaintiff's diagnoses included degenerative joint disease and chronic pain.  Id. Plaintiff's medications were refilled and he was encouraged to pursue the Shands card. Id.  At Plaintiff's June 14, 2007 visit, Dr. Robinson noted decreased range of motion in Plaintiff's knee and pain to palpation.  (Tr. 196).  Knee injections were added to Plaintiff's treatment plan.  Id.  It appears several labs were ordered including a complete blood count, a rheumatoid factor test, and an emotional stress reflex test.  Id.  However, there is no indication as to whether the tests were performed and no record of test results.  On July 5, 2007, Plaintiff was seen for a follow-up after his knee injection.  (Tr. 195).   Plaintiff reported the steroid injection was not successful in reducing his arthritic knee pain.  Id.  Upon examination, it was noted Plaintiff had obvious knee joint deformity and pain patches were prescribed for Plaintiff's knees.  Id.  Again, Plaintiff was diagnosed with chronic pain.  Id.  Plaintiff was also given a prescription for Celebrex.  Id.

ii.   **Hearing Testimony**

Plaintiff's hearing was held on September 25, 2007, before Administrative Law Judge, Robert Droker.  (Tr. 207).  Plaintiff stated he had not worked since 2006 when he worked as a meter reader.  (Tr. 209, 211).  Plaintiff testified he stopped working after he injured his leg by falling through a little hole in the ground.  (Tr. 210).  Plaintiff mentioned a back injury dating back to 1980 or 1981.  (Tr. 212).  Plaintiff stated the

doctor he saw then told him surgery would not do him any good, but the injury would gradually begin to affect him as he got older.  Id.  Plaintiff said he received unemployment benefits for six months in 2005 or 2006.  (Tr. 210).  Plaintiff indicated that in the years preceding his job as a meter reader, he had worked as a medical records auditor, a medical records tracer, a medical record transcript coordinator, and a handy-man at his brother's place of employment.  (Tr. 213 - 215).  Plaintiff testified he was not able to work anymore because he could not stand or walk for a long period of time, he could only sit for five (5) to ten (10) minutes at most, and he experienced excruciating pain when he did not take his medication.  (Tr. 210).  Plaintiff stated his prescription medication stopped his pain, but made him sleep.  (Tr. 210 - 211).  Plaintiff testified the amount of time he slept during the day varied from one to three hours, each time he took his medication.  (Tr. 223).

Plaintiff testified he slept and watched television most of the day.  (Tr. 216). Plaintiff stated he did not help with housework such as laundry, vacuuming, sweeping, washing dishes, or lawn care.  (Tr. 216 - 217).  Plaintiff testified while he could cook, he did not cook because it was hard to stand over a stove.  (Tr. 216).  Plaintiff indicated he ate simple meals like sandwiches, hot dogs, and Hungry Man dinners out of paper plates, to avoid washing dishes.  Id.  Plaintiff stated he did not eat out, listen to music, read, or socialize much.  (Tr. 217, 219).  Plaintiff stated his hobbies were bowling and playing basketball, however, he had not played either game since 2001 or 2002, because he was unable to play.  (Tr. 218).  Plaintiff testified he drove his wife's car to the grocery store, about a block and a half from his house, once or twice per week.  (Tr. 218, 220).  Plaintiff stated he used a riding cart to carry his groceries.  (Tr. 218).

Plaintiff testified he was able to bathe and dress himself, but he used a shower stool because he could not stand in the shower for a long time.  (Tr. 221).

Plaintiff stated he had pain in both knees, however, his right knee was more swollen than his left knee.  (Tr. 221).  Plaintiff testified the pain in his knees was constant, but with medication he had "very little pain."  (Tr. 222).  Plaintiff indicated that with medication he was able to walk, although he could not walk well.  (Tr. 223).  Plaintiff stated he could only walk "a good five to ten minutes" before getting sharp pains in his back.  Id.   Plaintiff stated he could only sit for ten minutes before rocking back and forth or having to stand.  (Tr. 224).  Plaintiff testified he had sharp, stabbing pains in his back which were the same as the pains in his knees.  Id.  However, Plaintiff said the pain in his back was not constant.  Id.  Plaintiff stated his back pains were on and off, once he took his medicine.  Id.  Plaintiff noted he would feel it if he made a sudden move.  Id.   Plaintiff testified he wore knee braces all the time because without them it was difficult for him to move at all.  (Tr. 225).  Plaintiff also stated he used a cane all the time.  Id.  Plaintiff indicated the knee braces and the cane were prescribed by Dr. Robinson.  Id.  Plaintiff testified the injections he received in his knees only helped for about an hour and a half, although he was told the relief was supposed to last a month.  Id.  Plaintiff stated the patches prescribed for his back could also be used for his knee pain.  Id.  Plaintiff said the patches did nothing for his knee pain, but they did help a little with the pain in his back.  Id.

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met insured status requirements of the Social Security Act through December 31, 2006. (Tr. 19). At step one, the ALJ found although Plaintiff had worked since his alleged onset date, Plaintiff had not engaged in substantial gainful activity. (Tr. 19). At steps two and three, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease and disorders of the spine and knees. (Tr. 19). The ALJ further determined Plaintiff retained the residual functional capacity to:

perform sedentary or light work with a sit-stand option and a
need to avoid ladders or unprotected heights, operation of
heavy moving machinery, squatting or crawling, operation of
foot controls, unusual stress.

(Tr. 20).  Further, the ALJ found Plaintiff retained a residual functioning capacity for:

occasional bending, crouching, kneeling, [and] stooping,
[with a] ten pound maximum lifting capacity [and a] need for
a mono cane.

Id.  In making this determination, the ALJ found the opinions of Plaintiff's treating

physician, Mary E. Robinson, M.D., were only entitled to limited weight.  (Tr. 21).  The

ALJ determined Dr. Robinson's opinions contained many inconsistencies and were not

supported by the evidence.  Id.  Additionally, the ALJ found Plaintiff's testimony of

disabling limitations was not entirely credible.  (Tr. 22).

At step four, the ALJ utilized the testimony of a vocational expert ("VE") to

determine whether Plaintiff could perform any of his past relevant work.  (Tr. 58-60).

The VE testified Plaintiff could perform his past relevant work as an audit clerk.  (Tr. 23-

24).  However, the VE stated while Plaintiff's RFC would allow him to perform light,

unskilled work, the availability of work would be impeded by Plaintiff's additional

limitations.  (Tr. 25).  Considering all of Plaintiff's limitations, the VE testified Plaintiff

would be able to perform the requirements of representative occupations such as a

ticket taker, a ticket seller, an order clerk - food and beverage, and a callout operator

because each one of those jobs would allow two fifteen (15) minute breaks, a thirty (30)

minute lunch break, and two unscheduled absences per month.  (Tr. 25).  The ALJ

determined based on Plaintiff's age, educational background, work experience, and

residual functional capacity, Plaintiff was capable of making a successful adjustment to

other work that existed in significant numbers in the national economy. Id. Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 20, 21).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

**B.    Issues on Appeal**

Plaintiff argues three issues on appeal.  First, Plaintiff argues the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Robinson.  (Doc. 16, pp. 9-11).  Second, Plaintiff argues the ALJ erred in giving substantial weight to the opinion of a non-examining state agency physician.  (Doc. 16, pp. 11-33).  Third, Plaintiff argues the ALJ committed error by finding Plaintiff's testimony not credible.  (Doc. 16, pp. 13-18).  The Court will address each of these issues.

**I.    The ALJ's evaluation of Dr. Robinson's opinions**

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241.  In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he must clearly articulate the reasons for so doing.  Id.

In this case, the ALJ found Dr. Robinson's medical opinions "contained many inconsistencies" and were not bolstered by the record evidence.  (Tr. 20, 21).  However, the ALJ did not completely discredit Dr. Robinson's opinions.  Instead, the ALJ discredited the portions of the treating physician's opinions he found were unsupported by progress notes, clinical findings, and the assessments of the other medical sources.

(Tr. 21). Further, the ALJ gave some weight to those portions of Dr. Robinson's statements that he found were supported by the record.

Plaintiff argues the ALJ's reasons for rejecting Dr. Robinson's opinions are not supported by substantial evidence and are contrary to law. (Doc. 16, p.10). First, Plaintiff contends there were no significant inconsistencies in Dr. Robinson's opinions. (Doc. 16, pp. 10 - 11). The Commissioner contends Plaintiff's argument actually emphasizes the contradictions in Dr. Robinson's opinions. (Doc. 18, p. 11). Further, the Commissioner argues the ALJ, as the trier of fact, was obligated to resolve the conflicts in the evidence. Id.

Upon review, the Court finds the ALJ provided several examples of inconsistencies in Dr. Robinson's reports. First, the ALJ pointed out that Dr. Robinson expressed conflicting opinions regarding Plaintiff's ability to lift and to bend. (Tr. 20). Specifically, Dr. Robinson opined Plaintiff had a lifetime restriction of no lifting, bending, or squatting, but also stated Plaintiff could lift 20 pounds and bend occasionally. Id. Second, the ALJ noted Dr. Robinson indicated Plaintiff could work 31 - 40 hours per week, but also stated Plaintiff was unable to work. Id. Third, the ALJ pointed out that Dr. Robinson stated Plaintiff's condition was permanent but, in the same form, Dr. Robinson indicated his condition was temporary and only expected to last (12) twelve months. (Tr. 20, 164).

Additionally, the ALJ highlighted portions of Dr. Robinson's opinions he found unsupported by the record. For example, Dr. Robinson opined Plaintiff could not grasp with both hands or use his hands for fine manipulation, however, Dr. Robinson's progress notes revealed no clinical/objective findings supporting these conclusions. Id.

13

Moreover, the ALJ pointed out that the results of Plaintiff's consultative examination showed Plaintiff's upper extremities were normal, with no impairment of gross or fine movements. (Tr. 21). The consultative examination also showed Plaintiff had normal grip strength in each hand, and an ability to lift 20 pounds with both hands. (Tr. 21, 167). The Court finds the inconsistencies highlighted by the ALJ were significant and provided the ALJ with good cause to give limited weight to Dr. Robinson's opinions.

Second, Plaintiff argues that at the very least, the ALJ should have contacted Dr. Robinson to obtain clarification of the inconsistencies in the reports before rejecting the opinions of Plaintiff's only treating physician. (Doc. 16, p. 10). On the other hand, the Commissioner argues the ALJ had sufficient information to make a disability determination and therefore, the ALJ was not required to seek clarification from Plaintiff's treating source. (Doc. 18, p. 12). Furthermore, the Commissioner contends any explanation Dr. Robinson might have provided would not have changed the fact that the doctor's opinions were inconsistent with the record. Id.

Generally, an ALJ is not required to re-contact the claimant's treating physician for clarification where the ALJ's decision is supported by other evidence of record. Osborn v. Barnhart, 194 Fed. Appx. 654, 668 (11th Cir. 2006) (finding the ALJ had no obligation to seek clarification where his decision was supported by other treating source opinions and state agency determinations). In Osborn, the court also held that where the plaintiff was represented by counsel, who neither requested clarification, or objected to the inadequacy of the medical records, the ALJ was not required to seek additional information. Id.

Similarly, in this case, the Court finds the ALJ was not required to re-contact Dr.

Robinson for additional information. Although Dr. Robinson was Plaintiff's only treating doctor, there were obvious inconsistencies in her reports, which Plaintiff clearly acknowledged. See (Doc. 16, p. 10). However, Plaintiff's counsel did not object to Dr. Robinson's report or request clarification of the same. It seems Plaintiff failed to object to the noted contradictions in Dr. Robinson's reports because he considered them insignificant. Id. However, the Court finds the onus was on Plaintiff, not the ALJ, to ensure the clarity of the record. See Osborn, 194 Fed. Appx. at 668 (holding it is the plaintiff's burden to provide evidence in support of his claim). Here, the ALJ exercised his judgment as the trier of fact and resolved conflicts in the medical evidence presented. See Richardson, 402 U.S. at 399 (1971)(finding the ALJ has the duty to resolve conflicts in the medical evidence). Furthermore, there was enough other evidence in the record, including the findings of Plaintiff's consultative examiner and the state agency physician, to support the ALJ's determination. Accordingly, the Court concludes the ALJ established good cause, based on the noted inconsistencies, to limit the weight placed on Dr. Robinson's opinions, and the ALJ was not required to re-contact Dr. Robinson.

### ii. The opinion of the non-examining, state agency physician

In this case, the ALJ gave substantial weight to the opinion of Plaintiff's consultative examiner, Dr. Tran, and that of the non-examining, state agency physician, Dr. Rees. (Tr. 21). Plaintiff argues the ALJ erred by giving substantial weight to the opinion of the non-examining physician, Dr. Rees. (Doc. 16, pp. 11-13). The Commissioner contends the ALJ credited Dr. Rees's opinion only after finding it was "consistent with Dr. Tran's observations, and supported by the medical evidence of

record as a whole." (Doc. 18, p. 10).

Standing alone, the opinion of the non-examining physician is not entitled to substantial weight where it is contrary to that of the claimant's treating physician. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). However, when the ALJ has established good cause for not relying on the treating physician's opinion, he is permitted to consider reports from non-examining, non-treating physicians. Lewis v. Apfel, No. Civ. A. 99-0330-CB-G, 2000 WL 207018, at *8 (S.D. Ala. Feb. 16, 2000); Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (finding the ALJ did not err in crediting the reports of non-examining, non-treating physicians where the ALJ stated "good cause" for not according the treating physician's opinion the substantial weight normally required). This is especially true when the non-examining physician's report is consistent with that of an examining physician. Edwards v. Sullivan, 937 F.2d 580, 585) (11th Cir. 1991). When a treating source's opinion is not given controlling weight, the ALJ is required to consider the opinions of non-examining, reviewing, state agency physicians and explain the weight given to those opinions. Magill v. Comm'r of Soc. Sec., 147 Fed. Appx. 92, 95 (11th Cir. 2005) (citing 20 C.F. R. § 404.1527(f)(2)(i)-(ii)).

In this case, the ALJ discredited the portions of Dr. Robinson's opinions which were inconsistent and unsupported by progress notes, clinical findings, and the assessments of the other medical sources. See 20 C.F.R. § 404. 1527(d)(2)(providing a treating source's medical opinion will receive controlling weight only if it is consistent with other substantial evidence in the record). In so doing, the ALJ properly established good cause for not relying on the treating physician's opinion. Therefore, the ALJ was required to consider the reports from non-examining, non-treating, state agency

physicians and explain the weight given to those opinions.  See Magill 147 Fed. Appx. at 95.

Turning to the ALJ's reasons for giving substantial weight to the opinion of a non-examining, state agency physician, the ALJ's reasons are as follows: 1) Dr. Rees is a specialist; 2) Dr. Rees's opinion was consistent with that of the consultative examiner, Dr. Tran; and 3) Dr. Rees's opinion was supported by the medical evidence of record. (Tr. 21).  First, in evaluating the ALJ's reasons, the Court finds here, where Plaintiff's impairments involve his back and his knees, the fact that Dr. Rees is a specialist in general and thoracic surgery was not an adequate reason to place substantial weight on his opinion.  In this instance, Dr. Rees's area of specialization is unrelated to Plaintiff's impairments.  See 20 C.F. R. § 404.1527(d)(5) (stating weight to be given to the opinion of a specialist about medical issues related to his or her area of specialty).  Nevertheless, the ALJ provided additional reasons for his finding which are supported by substantial evidence.  Specifically, the ALJ found the opinions of Dr. Tran, the consultative examiner, and Terry Rees, M.D., a state agency medical consultant, were consistent with each other, with the clinical findings, and with the medical evidence as a whole.  Accordingly, the ALJ determined Dr. Tran's opinion was worth substantial weight.  The Court finds the fact that Dr. Rees's opinion was consistent with the findings of an examining physician, Dr. Tran, coupled with the fact that his opinion was bolstered by Dr. Tran's clinical/objective findings, provides substantial evidence to support the ALJ's determination.  Accordingly, the ALJ did not err in placing substantial weight on the opinion of the non-examining, state agency physician.

### iii.    The ALJ's evaluation of Plaintiff's subjective complaints

Plaintiff also takes the position that the ALJ improperly discounted Plaintiff's subjective complaints of pain. (Doc. 16, pp. 13 -18). Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ

18

must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Dep't of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

In applying the Eleventh Circuit's pain standard, the ALJ in this case noted the x-rays taken by Dr. Tran showed some objective basis for pain. (Tr. 23). However, the ALJ found Plaintiff's "testimony of disabling limitations far exceed[ed] the medical evidence of record and other evidence." (Tr. 22). The ALJ provided several reasons for discrediting Plaintiff's testimony.

First, the ALJ found Plaintiff's testimony that he was unable to afford treatment not credible because Plaintiff failed to pursue an indigent healthcare card at Shands, despite repeated encouragement to do so. Id. The ALJ determined Plaintiff's discomfort could

not have been as severe as alleged because, by not taking the steps necessary to obtain a Shands card, Plaintiff failed to use the resources available to him.  (Tr. 23).  Also, in regards to Plaintiff's claim of indigence, the ALJ found Plaintiff's claim was undermined by the fact that Plaintiff maintained a smoking habit despite his alleged inability to afford the healthcare he needed.  (Tr. 22).

Plaintiff argues he tried to obtain a Shands card, but his application was not processed due to the fact that his recent address change was not reflected on his driver license.  (Doc. 16, p. 14).  Plaintiff also contends the fact that he was already receiving services at the clinic, a health care center for the homeless and indigent, indicates he was attempting to use the resources available to him.  Id.  The Commissioner argues while Plaintiff blamed his failure to obtain a Shands card on a "recent" address change back in 2005, that does not explain why Plaintiff failed to obtain a Shands card by June 2007, two years later.  (Doc. 18, p. 18).  Furthermore, the Commissioner contends the fact that Plaintiff was limited to indigent care services does not explain why Plaintiff's treatment was as infrequent as it was.  Id.

In general, a claimant's lack of funds will justify his failure to access prescribed treatment or medical resources.  See Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (agreeing with every circuit that has held poverty excuses noncompliance); see also Dover v. Bowen, 784 F.2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medication because of lack of finances").  However, in this case, if a driver license with a current address is all Plaintiff needed to obtain a Shands card and that Shands card would have allowed Plaintiff to receive the additional care he needed, the Court finds Plaintiff has failed to

justify his failure to obtain a Shands card from 2005 through 2007. Certainly, it does not take two years to update the address on one's driver license. Accordingly, the Court concludes it was not unreasonable for the ALJ to find Plaintiff's allegations of pain less than credible based on that evidence. Additionally, with regard to Plaintiff's continued smoking habit, the Court finds no error in the ALJ's reasoning. See Seals v. Barnhart, 308 F. Supp. 2d 1241, 1248 (N.D. Ala. 2004) (considering the fact that the monetary cost of claimant's smoking habit could have covered cost of claimant's health care need). As such, the ALJ did not err in considering Plaintiff's testimony that he was unable to afford treatment not credible.

Second, the ALJ found Plaintiff's testimony not entirely credible because Dr. Robinson's progress notes revealed only sporadic prescriptions for medication and revealed no record of the side effects testified to by Plaintiff. (Tr. 23). The ALJ also noted Plaintiff was able to go two to three months without medication, and Plaintiff testified that with medication he experienced very little pain. Id.

Plaintiff argues the ALJ's interpretation of the treatment received is not supported by the evidence of record. (Doc. 16, p. 15). Specifically, Plaintiff contends the ALJ was incorrect in stating that Plaintiff's only medications were over-the-counter. Id. The Commissioner argues Plaintiff's treatment records from 2005 and 2006 show his chief complaint at his clinic visits was the need to have forms filled out and the need to get medication refills; therefore, it was reasonable for the ALJ to conclude Plaintiff was responding well to treatment and was merely requesting medication. (Doc. 18, p. 17).

To begin with, the ALJ specifically stated two dates, May 26, 2005 and August 26, 2005, on which Plaintiff indicated he was only taking over-the-counter Tylenol, Advil, and

Aleve. (Tr. 23). The ALJ also stated Plaintiff received sporadic prescriptions for medication. Id. The Court finds the ALJ's statements regarding Plaintiff's medication are supported by the record. (Tr. 87, 129, 188 - 200).

The Eleventh Circuit has held that unexplainable gaps in a claimant's medical care undermine the claimant's testimony of disabling pain. See, e.g., Thibeault v. Astrue, No. 8:07-CV-589-T-TGW, 2008 WL 3910752, at *5 (M.D. Fla. Aug. 25, 2008) (finding the gap in claimant's medical care contradicted claims of incapacitating pain). Additionally, where there are no documented side effects from medication noted in the claimant's progress notes, substantial evidence supports the ALJ's finding that a claimant's testimony about side effects is less than credible. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (finding where the record did not disclose concerns about side effects of claimant's medication, the ALJ's conclusion that claimant's medication caused no significant problems was supported by substantial evidence). Accordingly, the Court finds the fact that Plaintiff was able to go several months without medication, together with the infrequency of Plaintiff's visits to the clinic, and the absence of documented side effects in Plaintiff's progress notes provide substantial evidence to support the ALJ's finding that Plaintiff subjective complaints were not entirely credible.

Third, the ALJ found Plaintiff's progress notes showed good response with treatment and they evidenced very limited information regarding objective testing. (Tr. 22). Plaintiff argues although the ALJ stated Plaintiff's "progress notes show[ed] good response to treatment," Plaintiff consistently complained of knee and back pain despite treatment and Plaintiff stated that the injections prescribed for his knee pain were not helpful. (Doc. 16, p. 14). Furthermore, Plaintiff argues while the ALJ noted there was

22

"very limited information regarding testing or other objective evidence," the ALJ failed to take note of the fact that the x-rays taken by Dr. Tran demonstrated abnormalities in both Plaintiff's spine and left knee, and the ALJ did not consider the fact that Plaintiff was limited to indigent care services. Id. Plaintiff contends the evidence of record does not show Plaintiff had "good response to treatment." Id. The Commissioner contends that to the extent the ALJ erred in his characterization of Plaintiff's records, such error was harmless because the record of Plaintiff's treatment was only one reason the ALJ rejected Plaintiff's testimony. Id.

Harmless errors are those that would not change the ALJ's ultimate disability determination. See Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir 1983); see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990). Here, contrary to Plaintiff's argument, the Court notes the ALJ acknowledged that the x-rays taken by Dr. Tran revealed some objective basis for Plaintiff's pain. See (Tr. 23). Additionally, while the Court finds the ALJ's statement that Plaintiff's progress notes "showed good response to treatment" does not accurately reflect Plaintiff's treatment record, the Court concludes such error was harmless because even if the ALJ's assessment of Plaintiff's progress notes was more precise, it would not have changed the ALJ's ultimate decision. Plaintiff's "good response to treatment" was not the ALJ's only reason for discrediting Plaintiff's subjective complaints and as stated above, substantial evidence supports the ALJ's other reasons for finding Plaintiff's testimony not entirely credible.

Fourth, the ALJ reasoned that because Plaintiff had collected six months of unemployment benefits, Plaintiff had in essence attested to the fact that he was not only

available, but able to work during the time relevant to his application for disability benefits. (Tr. 21). Plaintiff argues the ALJ should not have discredited Plaintiff's testimony based on the fact that Plaintiff received unemployment benefits. (Doc. 16, pp. 15- 18). The Commissioner contends whether or not the ALJ improperly considered Plaintiff's receipt of unemployment benefits, Plaintiff did not provide evidence to support his allegations of disabling pain. (Doc. 18, pp. 19-20, 17).

Standing alone, the receipt of unemployment benefits does not disqualify a claimant from consideration for social security benefits. See O'Neal v. Astrue, No. 3:08-cv-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009); Riley v. Heckler, 585 F.Supp. 278, 285 (S.D. Ohio 1984). As such, the Court finds the mere fact that Plaintiff applied for and received unemployment compensation after leaving his job as a meter reader does not equate to Plaintiff being able to perform substantial gainful activity and is therefore, not a good reason to discredit Plaintiff's testimony.

Finally, the ALJ discredited Plaintiff's testimony because "claimant described a wide range of activities of daily living compatible with competitive work." (Tr. 23). Plaintiff argues the ALJ's findings are not supported by the evidence of record. (Doc. 16, pp. 14-15). The Court agrees. Here, the ALJ determined Plaintiff performed activities compatible with competitive work because he said Plaintiff testified to "some household [sic], some driving, reading, shopping, and some social activities." (Tr. 23). However, the Court finds the ALJ misstated Plaintiff's description of his daily activities. Plaintiff stated he **did not** cook, vacuum, sweep, do yard work, use the computer, or socialize because he could not stand for long. (Tr. 216-220) (emphasis added). Plaintiff also stated he was **unable** to carry his groceries, he read and attended church once in a

24

while, and he drove only when he had to go to the nearby grocery store, once or twice per week.  Id.  The Court finds while the ALJ's misrepresentation of the record weighs against holding that the ALJ's credibility finding is supported by substantial evidence, and while the ALJ erred with regard to Plaintiff's receipt of unemployment benefits, the ALJ's additional reasons are legally sound and are supported by substantial evidence.

Notably, the ALJ did not discredit Plaintiff's testimony in its entirety.  It appears the ALJ credited Plaintiff's testimony that he had "very little pain" with his medication (Tr. 222), that the prescribed knee braces helped him (Tr. 224 - 225), and that he was able to walk despite his need for a cane.  (Tr. 223, 225).  As a result, the ALJ rejected Plaintiff's claim of total disability and found that despite Plaintiff's physical challenges, Plaintiff could adjust to jobs that, by their very nature, would accommodate Plaintiff's limitations. (Tr. 25).  The Court finds substantial evidence supports the ALJ's findings and declines to disturb the ALJ's determination that Plaintiff's subjective complaints of pain were not wholly credible.

## V.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards.  Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.

**DONE AND ENTERED** at Jacksonville, Florida, this __27th__ day of July, 2009.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Timothy J. Corrigan
District Judge